The court will proceed to the 6th case, United States v. Shannon. Ms. Christensen. May it please the court, counsel, good morning, I'm sorry, good afternoon, your honors. You came this morning, but you're arguing in the afternoon. I've been here all morning, but I almost made it. My name is Joanna Christensen. I represent the appellant, Ralph Shannon, in this matter. This case presents a vague and overbroad condition of supervised release. And unlike many of the cases that I've been here talking about supervised release, this issue has been preserved and argued quite well below. Mr. Shannon filed a modification, a motion to modify his conditions of supervised release soon after this court decided Thompson. Before the district court could have a hearing on that, the probation officer filed a violation report based on a closed circuit television camera found in his apartment and some CDs that she didn't know were there. That revocation was not entered. The district court said that he was skating the line but decided not to revoke. And then it went on to modify special condition number two. And that's why we're here today is special condition number two. The wording that the district court chose is vague and overbroad and could potentially apply to thousands and thousands of items that Mr. Shannon might want or need to have in his possession or use in the community. The language is any devices associated or falling within the general category of information technology. As pointed out in both our briefs and in the district court, this could include a computer mouse, a calculator. It actually would include a landline telephone. And what the real problem in this case, the district court's concern, was Mr. Shannon's potential downloading, storing, and viewing of child pornography. And with that being the main concern of the district court, there is a much more narrowly tailored way to address that concern than essentially a blanket prohibition on information technology. So what do you suggest? That there should be some list of things like landlines and ATM cards and things like that that should not be included? Well, I think, unfortunately, a list in either direction, either included or excluded, would become so impractical that it might not be a workable solution either. Our suggestion has always been, and it was in the district court, that he have to obtain permission for any device that has the capability of viewing, storing, downloading child pornography. And the district court, I think, misunderstood this and thought that we were talking about devices that only show or download child pornography. And that certainly was not the argument the defense counsel made. On our appendix, page 7, I'm sorry, page 4, the defense attorney actually says, capable of doing this. It's not something that only does this. For example, a thumb drive is capable of storing child pornography, games, pictures, briefs, presentations, all sorts of things. But that would be something he would have to have permission prior to purchasing. As of now, right? I'm sorry? Now? Right. Yeah, so if he's got some, he's obviously tech smart. He is. And so he made a lot of new gadgets that do different things, et cetera. And, of course, they can do a lot of things, including, unfortunately, access to this kind of stuff, which he's forbidden to do. So I don't know. Maybe he'll be limited in the expansion of what he can actually use. That's why I'm wondering if there's a list of things that you're worried about that he could use, but apparently too many things have multipurpose. I think so. So what's the probation officer supposed to do in monitoring him? Look at everything he's got and then see if he's using it wrongfully? And that's what was suggested at the hearing, that the probation officer would take an inventory of everything he has and then, I suppose, later on check everything to see. That would mean he checks it one day and he can access it the next day. I think that's part of the problem with enforcing this condition, is that it's a constantly changing situation. And I think in the Ballone case, or Ballon case, that was relied on by defense counsel, they say that the language used in that case, which refers mostly to computers and associated devices, is necessarily meant to apply to items that have the capability of downloading or storing child pornography. The district court said that that was not broad enough to cover the situation. So Mr. Shannon understands that he cannot download, possess, store child pornography. And the condition that he suggested, he would know which devices to report to probation if he were to purchase them. The condition as it is now is much broader than that and would include getting a new driver's license when the smart IDs come out, getting a new credit card with a chip reader, which most of us have started to receive now, getting a new remote control, the ones that you can talk into to change the TV channel. Those sorts of things would be covered by the condition as it is now but would not be covered by the condition that he proposed. Can every device have a blockage in it or something that prevents? I don't know. I'm not tech smart, so I don't know what parents and other people who might be concerned about this can block, make it unable to access these. And I don't know if that's even possible anymore. I know that it's possible for computers. I think it's possible for cell phones, iPads, that have applications. You can add an app that would block certain websites, certain materials. But other things, I don't think it's possible. I think a programmable microwave oven or there are crockpots that you can program to start at a certain time. Those all use the Internet. You can control from your phone. But I don't think they have apps to prevent downloading of information because that's not the way they're used. So there's nothing you can put on there if he accesses child pornography and the device explodes or something? I would think that I always say if we can do all these things, we should be able to actually stop child pornography on the Internet right there. Anything that is a known file should be able to be deleted. I don't know if that's a possibility. I just don't know enough about the technology. What I do know is that monitoring technology is possible for things that are computers and associated devices, and he has agreed to that in every situation. Well, maybe he can only, every device he has has to have that facility and the checks show that's what he's got on it. I don't know. It can't be removed. And that certainly is not objectionable if the condition applied only to those kind of devices that were capable of storing pornography or child pornography. But as it's written, which is on page 16 of our briefing. Condition 2 is too broad, huh? It's too broad. It would cover just about everything we use in everyday life. I was sitting working and trying to think of everything that I did today that involved information. But most everything we do in everyday life does not include access to child pornography. Exactly. So it can't be very many, I hope. And if he gets one of those, he's going to, or else he can't use it. Anyway, I've already said that. Right. I understand. I see I'm in my rebuttal unless the Court has questions. I'll save the remainder of my time. All right. Thank you, Ms. Christensen. Ms. Finn. Good afternoon, Your Honors. May it please the Court. Laura Shebelinsky Finn on behalf of the United States. I prosecuted Ralph Shannon back in 2006, and Mr. Shannon and I have been together along with Judge Crabb ever since then. This is not a case about a defendant who does not understand what his condition of supervised release is. This is a case about a defendant who doesn't agree with it. And that's an important distinction because the claim on appeal is that this is vague and overbroad. And this Court's defined those terms. That is, does it inhibit a wide range of activity, and one that does not afford a person of reasonable intelligence sufficient notice of conduct prohibited. As the Court's already recognized, Mr. Shannon is sort of beyond reasonable intelligence. He thinks he's pretty smart. And by this record, I think he is. And certainly he's tech savvy. But this is a notice requirement. It's not a prohibition. Unlike Volcker that the defense cites as the case to look at, that case prohibited Volcker from using the Internet at all or having any computers at all. Here, this is a notice requirement. Mr. Shannon has to notify his probation officer when he wants to get certain things. And the other part is the condition as a whole, when you look at the hearings in this case and the condition as a whole, it shows that the defendant really does understand what's going on here. And just to back up, the question before this Court is really very simple and narrow because the defendant conceded that a condition like this is appropriate and necessary. In fact, sort of at the end of a really lengthy hearing, his attorney said, look, any device that could be used to do unlawful things, a smartphone, a computer, a thumb drive, any of those kinds of things, fine, we agree. Okay, so what we're really talking about is Judge Crabb picking the probation officer's language over that of Mr. Shannon. And part of understanding why she picked that language is understanding Mr. Shannon himself and what she's dealt with and what the probation office has dealt with in terms of Mr. Shannon. And one can look at the hearing in this case prior to the review of the conditions when Mr. Shannon was testifying. He had a scrubbing software on his computer. And his defense attorney asked him, well, can't you use that to completely erase everything off the computer? He said, well, yeah, but that's certainly not my intent. Okay, so then I asked him, Mr. Shannon, isn't it true that if you had child pornography on this computer and you used this scrubbing software, it would be gone so that if your probation officer came to see your computer, she wouldn't be able to find it? Well, that's apples and oranges. I wouldn't say that. I mean, that's not what I'm trying to do. We go a little bit further in the hearing, and we're talking about the encryption that he had on his computer that led to this final petition. He encrypted a very large image. He told the probation officer that was a picture of his truck. At the hearing he said, it could be a truck, or it could have been Miley Cyrus. I don't know. I'm not sure which one it is. So this is what we're dealing with. He's trying to manipulate the conditions. So Judge Crabb, knowing Mr. Shannon very well, devised a condition that was a little bit broader than what he was suggesting because what she specifically wanted to include were these external devices. The defense talks about the camera on the peephole at his apartment and makes much of the fact that it was returned to him because it wasn't a violation of his condition. The point is, none of this stuff is a violation if the probation office knows he has it and can look at it. They don't know what to look at if they don't know what he has. So when you look at the whole record, what we have to do is what's reasonable and practical in a given case. This condition is tailored to Mr. Shannon and is tailored to the kind of supervisee that he is. How long was the suspended sentence? How long is the supervised release? Life? Right. I'm going to be here a lot longer, I think. Now, there's a couple of other things I would like to address. The defense suggests that you can't look at special condition 2 as a whole when you try to determine what devices it covers, and I disagree with that because as you read through the condition, it indicates that as to these devices, the probation office is authorized to install any application necessary to monitor it, that the defendant shall consent to and cooperate with unannounced examinations of the tech equipment, that the probation office can actually take it and look at it. We're not talking about an ATM. They're not going to take it as a microwave. I mean, we've got to be practical when we're dealing with these things. Probation officers aren't robots, and neither is Mr. Shannon. These people have to be able to work together to manage these conditions. Judge Crabb, later in the hearing, finally stated to Mr. Shannon, the point is that any device that falls within the category of special condition 2 may be removed if the probation officer believes it's necessary to examine it further, and Mr. Shannon said, I completely agree with that. Accordingly, this is reasonable in light of the whole record. These are people trying to work together. And note in this case, Judge Crabb didn't revoke Mr. Shannon's supervised release for having the scrubbing software, for having the encrypted file, for having the CDs and DVDs that had very young girls on them. She said, look, you're playing games here. Stop it. And let's just try to work together. I think that's the best we can do. Otherwise, we're going to be back here time and again because technology is... Not if she imposes a time of imprisonment. Right. We did have a time of imprisonment early on of 28 days to try to shake things up. Well, I mean legitimate time. The only other thing, Your Honor, is that in the reply brief, the defense suggests that the government has misstated the record. I will tell you that there is nothing that is a misstatement in the reply brief. Is he aware of the time he faces if he continues to do this? Of course he is. Well, it doesn't sound like it. I'll ask opposing counsel. Judge Crabb has certainly warned him of that. I was just saying, in the event of revocation, what happens? Well, if he's revoked... Is there revocation for a period of time? Right. And then he could be put back on supervised release. With these kinds of offenses, because you have a lifetime period of supervised release, you can always go back and be put on supervised release. Now, at some point, if Mr. Shannon toes the line and looks like he gets it, he could come back and ask to have his supervised release modified, terminated. People do that all the time. But as long as he continues to push the envelope and play games, that's not going to happen. Are there no other questions? All right. Thank you, Ms. Finn. Ms. Christensen. How many times has he been back before Judge Crabb? For revocation? Two times for revocation. It was revoked once. Modification several times, mostly to help him with housing and employment. And to answer the question you asked, the government, yes, he is aware of what he's doing. This is the second time I've represented Mr. Shannon. I don't have quite the history that she does or that Judge Crabb does, but I do know Mr. Shannon quite well. I will say that the language is very different, and we are talking about language, and the language proposed does limit the types of devices, whereas the language imposed is very, very broad. And Mr. Shannon is bright and very technology savvy. Not too bright. He's bright when it comes to computers. And he knows if it's limited to him, but when he sees the broad language in here, he's not entirely sure what he needs to notice the probation officer about. Ms. Christensen, you know my admiration for your advocacy, but do you really think we have an individual who's worried about buying a new microwave? I think not so much a microwave. I think he is worried about probably other peripheral things for his computer, such as the camera. So let's take that concern. So what would be inappropriate under this, what I would call common sense reading, for him to make inquiry whether he's about to make this purchase? Does it fall within a prescribed area or just a matter of giving notice? Isn't that really what this is all about? I mean that he, because he's so tech savvy and the concern of the district court judge that, I mean it seems to me there's, in this case, a very clear understanding between Mr. Shannon and the judge on what we're focusing on. And it does seem to me that, you know, we could come up with a parade of horribles. I don't want to suggest that's what you've done, but, you know, examples which I think really are a little beyond the pale. I think it really depends on the case. I think Mr. Shannon knows that they're concerned about downloading child pornography. And certainly his behavior has showed that he interprets that very strictly. And I think part of the problem is not so much the understanding between Judge Crabb and Mr. Shannon. It's that probation has been not quite consistent with enforcement. For example, the scrubbing software had been on there for four years and only the last probation officer complained about it. And about the monitoring software being scrubbed. I'm sorry, child pornography being scrubbed. The way the monitoring software works is that once he goes to a website, it logs that information not on his computer, but on a separate server and informs the probation office. So even if he scrubs everything from his computer, even if he burns the computer in acid, the probation office still knows he's visited those websites. So the inconsistent enforcement of the previous rules is part of the problem as well and part of the frustration on Mr. Shannon's behalf. Just one quick question. How old is he? I believe he's in his mid-60s. Mid what? Mid-60s. He does have several terminal and serious illnesses. He's on oxygen 24-7. All right. Thank you. Thank you, Ms. Finn. Thank you, Ms. Christensen. The case is taken under advisement. The court will stand in recess. Thank you.